Case 1:22-cv-05658-CPO-EAP   Document 38   Filed 07/25/24   Page 1 of 6 PageID: 426

**UNITED STATES DISTRICT COURT**
DISTRICT OF NEW JERSEY

| | |
|---|---|
| CHAMBERS OF<br>**CHRISTINE P. O'HEARN**<br>UNITED STATES DISTRICT JUDGE | MITCHELL H. COHEN BUILDING &<br>U.S. COURTHOUSE<br>4TH & COOPER STREETS<br>ROOM 6050<br>CAMDEN, NJ 08101<br>856-757-5167 |

July 25, 2024

**VIA CM/ECF**
Jason David Javie
JASON JAVIE, P.C.
Two Penn Center
1500 John F. Kennedy Boulevard
Suite 900
Philadelphia, PA 19102

   *On behalf of Plaintiff.*

Marvin L. Freeman
STATE OF NEW JERSEY, OFFICE OF
   THE ATTORNEY GENERAL
25 Market Street
P.O. Box 112
Trenton, NJ 08625

   *On behalf of Defendants.*

**LETTER ORDER**

   Re:   **Samuel Birth v. Michele Ray,** *et al.*
          **Civil Action No. 22-5658**

Dear Counsel:

   This matter comes before the Court on a Motion for Summary Judgment by Defendant Michele Ray. (ECF No. 25). The Court did not hear oral argument pursuant to Local Civil Rule 78.1. For the reasons that follow, Defendant's Motion is **GRANTED**.

   **I.**    **Background**[1]

   Defendant—a New Jersey State Trooper— and her partner, Trooper Pamlanye, were

---

[1] The facts set forth herein are undisputed unless otherwise noted. To the extent facts remain in dispute, the Court finds that they are immaterial to its legal analysis.

patrolling Collings Lakes in Buena Vista, New Jersey on November 7, 2020.[2] (Def's. SOMF, ECF No. 25-2 at ¶ 1). Around 12:40 AM, Defendant observed two unoccupied vehicles in the parking lot of a park that was closed at the time. (ECF No. 25-2 at ¶¶ 1–4). Defendant shined a flashlight into the vehicles and saw a Ghost-branded vape pen on the front passenger floor of Plaintiff Samuel Birth's vehicle. (ECF No. 25-2 at ¶¶ 6–7). Defendant believed that the pen contained marijuana oil which, at the time in New Jersey, was considered a controlled drug substance. (ECF No. 25-2 at ¶¶ 7, 9). Trooper Pamlanye used his phone to conduct a Google search for Ghost-branded vape pens and the results showed that they contain marijuana. (ECF No. 25-2 at ¶ 10).[3]

Sometime later, Plaintiff and two others emerged from a wooded area and Plaintiff stood next to his car after being instructed to stand by the car in which he arrived. (ECF No. 25-2 at ¶¶ 15, 24–25). Trooper Pamlanye placed Plaintiff in handcuffs, searched him, placed him in a police vehicle, and read him his *Miranda*[4] rights. (ECF No. 25-2 at ¶¶ 28, 30). When asked, Plaintiff told Trooper Pamlanye that the Ghost pen belonged to A.T.,[5] but A.T. denied that it was hers when asked by Defendant. (ECF No. 25-2 at ¶¶ 43, 59). Plaintiff then gave the Troopers permission to search his car. (ECF No. 25-2 at ¶ 46). The Ghost packaging was empty and the Troopers were unable to find a Ghost vape in the vehicle. (ECF No. 25-2 at ¶¶ 63–64). Plaintiff's handcuffs were removed and the Troopers intended to release him with no charges. (ECF No. 25-2 at ¶¶ 65–66).

Defendant told Plaintiff that he was permitted to leave but that his minor companions would need to be picked up by their parents at the police station. (ECF No. 25-2 at ¶¶ 67–68). Defendant handed Plaintiff his car keys. (ECF No. 25-2 at ¶ 70). Plaintiff then told her that he had driven to the park and intended to drive home and/or to the police station. (ECF No. 25-2 at ¶¶ 71–

---

[2] Defendant's Statement of Material Facts erroneously lists this date as November 7, 2023. *See* (ECF No. 25-2 at ¶ 1); (Pl.'s SOMF, ECF No. 29 at ¶ 1).

[3] Plaintiff denies that Trooper Pamlanye searched for the vape pen on Google, arguing that Defendant "did not know what her fellow Trooper [G]oogled." (ECF No. 29 at ¶ 10). However, the portions of body-worn camera footage relied on in Defendant's Statement of Material Facts belie Plaintiff's argument. In Trooper Pamlanye's body-worn camera footage, Defendant tells him to "[g]et [his] phone and Google it," after which Trooper Pamlanye can be seen using his phone and says "let me double check." He then finds "Ghost weed pen images" and shows them to Defendant who confirms the packaging is the same as that observed in Plaintiff's vehicle. *See* (ECF No. 25, Ex. H at 1:39–2:30); *see also Lavecchia v. Walmart Inc.*, No. 20-9035, 2023 WL 4074059, at *2 (D.N.J. June 20, 2023) ("In attempting to defeat summary judgment, speculation and conclusory allegations do not satisfy the nonmoving party's duty" to refrain from "rest[ing] on mere allegations.") (internal quotation, citation, and alterations omitted). In any event, Plaintiff does not dispute that the Ghost website represents that some of its vape pens contain cannabis. *See* (ECF No. 25-2 at ¶ 11; ECF No. 29 at ¶ 11).

[4] *Miranda v. Arizona*, 384 U.S. 436 (1966).

[5] Some of Plaintiff's companions were minors at the time. The Court will therefore refer to them by their initials.

2

73, 104–06). Defendant believed that Plaintiff was exhibiting signs of impairment. (ECF No. 25-2 at ¶ 75). After failing various sobriety tests, Defendant arrested Plaintiff for Driving While Intoxicated ("DWI"). (ECF No. 25-2 at ¶¶ 83–86, 91–93, 95, 99–103, 108). Further testing showed that Plaintiff had neither drugs nor alcohol in his system. (ECF No. 25-2 at ¶¶ 112, 120). His DWI charges were later dismissed. (ECF No. 25-2 at ¶ 121).

Plaintiff filed a Complaint against Defendant on September 21, 2022, bringing claims for unreasonable search and seizure (Count One) and False Imprisonment (Count Two),[6] alleging that Defendant lacked probable cause to believe Plaintiff was driving while intoxicated. (ECF No. 1 at ¶¶ 12–60). Defendant answered on December 21, 2022, (ECF No. 8), and filed her Motion for Summary Judgment on December 19, 2023. (ECF No. 25). Plaintiff filed his opposition on January 2, 2024, (ECF No. 29), to which Plaintiff replied on January 9, 2024. (ECF No. 32).

## II. Legal Standard

Under Federal Rule of Civil Procedure 56, a court shall grant summary judgment when "a movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A fact in dispute is material when it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Disputes over irrelevant or unnecessary facts will not preclude granting a motion for summary judgment. *Id.* "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255). A court's role in deciding a motion for summary judgment is not to evaluate the evidence and decide the truth of the matter but rather "to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

A party moving for summary judgment has the initial burden of showing the basis for its motion and demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once met, the burden shifts to the nonmoving party to "go beyond the pleadings and by h[is] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* at

---

[6] Plaintiff's Complaint is not a model of clarity. It references the Ku Klux Klan Act ("KKK Act") in Count One, cites the Nineteenth Amendment in the Civil Cover Sheet, and fails to specify if Plaintiff's false imprisonment claim arises under § 1983, a state statute, or the common law. *See generally* (ECF No. 1). Plaintiff also provides an improper citation to the KKK Act, which can be found at 42 U.S.C. § 1985—not 42 U.S.C. § 1983 as Plaintiff suggests. (ECF No. 1 at ¶ 1). Further, the KKK Act applies only to claims "which are founded upon some class-based or racial invidiously discriminatory intent." *Maida v. Andros*, 710 F. Supp. 524, 530 (D.N.J. 1988). And the Nineteenth Amendment enshrined the right for women to vote. U.S. CONST. amend. XIX. Both are clearly inapplicable here and the Court therefore assumes Plaintiff is attempting to proceed under 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments.

324 (internal quotations and citation omitted). To withstand a properly supported motion for summary judgment, the non-moving party must identify specific facts and affirmative evidence that contradict the moving party. *Anderson*, 477 U.S. at 250. "[I]f the non-movant's evidence is merely 'colorable' or is 'not significantly probative,' the court may grant summary judgment." *Messa v. Omaha Prop. & Cas. Ins. Co.*, 122 F. Supp. 2d 523, 528 (D.N.J. 2000) (quoting *Anderson*, 477 U.S. at 249–50). Ultimately, there is "no genuine issue as to any material fact" if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex Corp.*, 477 U.S. at 322.

### III.   Discussion

Plaintiff "does not dispute that . . . [Defendant] was entitled to conduct an investigation and detain [Plaintiff]." (Pl.'s Br., ECF No. 28 at 5). He also concedes that Defendant "had probable cause to believe that he was under the influence of alcohol or a controlled substance." (ECF No. 28 at 9). The crux of his argument is that Defendant "lack[ed] . . . probable cause to believe that [Plaintiff] drove or was operating a vehicle while he was intoxicated." (ECF No. 28 at 5). But the law imposes no such requirement on law enforcement. Therefore, Defendant is entitled to summary judgment on all counts.

#### A.  Defendant is Entitled to Summary Judgment on Plaintiff's Unreasonable Search and Seizure Claim.

In Count One, Plaintiff asserts an unreasonable search and seizure claim under 42 U.S.C. § 1983, alleging that Defendant violated Plaintiff's rights under the Fourth and Fourteenth Amendments when Plaintiff's person, vehicle, and effects were searched and seized because Defendant lacked probable cause that Plaintiff had driven while intoxicated. (ECF No. 1 at ¶¶ 13, 32, 35, 48). However, it appears that Plaintiff now abandons that claim. *See* (ECF No. 28 at 5) (explaining that, because Plaintiff "does not dispute that . . . [Defendant] was entitled to conduct an investigation and detain [Plaintiff]," his "brief does not discuss this aspect of [Defendant's] motion."). For the sake of completeness, and since Plaintiff has not formally dismissed Count One, the Court will proceed with a brief analysis.

The Fourth Amendment protects against unreasonable searches and seizures. *Levys v. Shamlin*, 808 F. App'x 97, 100 (3d Cir. 2020). "Searches and seizures without warrants are presumptively unreasonable, but there are exceptions, one of which is a brief, investigatory seizure commonly called a '*Terry*[7] stop.'" *Id.* at 101 (internal citations, quotations marks, and alteration omitted). "[A]n officer may . . . conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot," which is "a less demanding standard than probable cause." *U.S v. Valentine*, 232 F.3d 350, 353 (3d Cir. 2000). Plaintiff's concession that Defendant was entitled to detain him and had probable cause to believe he was under the influence of substances clearly moots any argument that searching Plaintiff violated his constitutional rights because this is more than sufficient to show that Defendant had a reasonable,

---

[7] *Terry v. Ohio*, 392 U.S. 1 (1968).

articulable suspicion that criminal activity was afoot.

Any argument Plaintiff initially made objecting to the search of his vehicle is similarly flawed, as Plaintiff consented to the search of his vehicle and does not allege that his consent was somehow invalid. *See Only v. Cyr*, 205 F. App'x 947, 949 (3d Cir. 2006) (finding that a search conducted after consent was properly given did not constitute a constitutional violation).

Therefore, Defendant is entitled to summary judgment on Count One.

### B. Defendant is Entitled to Summary Judgment on Plaintiff's False Imprisonment Claim.

In Count Two of the Complaint, Plaintiff asserts a false imprisonment claim, arguing that, even though Defendant had probable cause to believe Plaintiff was intoxicated—and even though Plaintiff told Defendant he intended to drive—Defendant lacked probable cause to believe Plaintiff had operated a vehicle while under the influence, and he was therefore unlawfully detained. (ECF No. 1 at ¶¶ 51–60); (ECF No. 28 at 5).

As noted previously, Plaintiff fails to specify whether he is asserting this claim under New Jersey law or § 1983. In New Jersey, "false imprisonment has two elements: (1) an arrest or detention of the person against his or her will and (2) lack of proper legal authority or legal justification." *Leang v. Jersey City Bd. of Educ.*, 969 A.2d 1097, 1117 (N.J. 2009) (internal quotation marks and citation omitted). Under § 1983, "a plaintiff must establish: (1) that she was detained; and (2) that the detention was unlawful." *James v. City of Wilkes-Barre*, 700 F.3d 675, 682–83 (3d Cir. 2012). This distinction between state and federal law is immaterial to the Court's analysis as Plaintiff has conceded his detention was proper and because the Court finds that his arrest for violation of New Jersey's DWI statute was also proper.

A person has committed DWI in New Jersey when they "operate[] a motor vehicle while under the influence of [alcohol or drugs], or operate[] a motor vehicle with a blood alcohol concentration of 0.08 percent or more by weight of alcohol in the defendant's blood." N.J.S.A. 39:4-50(a). The term most critical to resolution of this matter is the statute's use of the word "operate." "Clearly, the primary goal that the Legislature sought to achieve by enacting the drunk-driving statute was 'to curb the senseless havoc and destruction caused by intoxicated drivers.'" *State v. Morris*, 621 A.2d 74, 76 (N.J. App. Div. 1993) (quoting *State v. Tischio*, 527 A.2d 388, 392 (N.J. 1987)). New Jersey "courts have not hesitated to give a broad construction to the terms of N.J.S.A. 39:4-50(a) when a narrow or literal interpretation would frustrate the fundamental regulatory goals underlying New Jersey's drunk-driving laws." *Tischio*, 527 A.2d at 392. The danger of harm to the driver and others "frequently arises *even before* an intoxicated person may have put his or her car in motion." *Id.* (emphasis added). "Thus, while the statute refers to the operation of a motor vehicle, actual operation is not required to satisfy this element of the statutory offense." *Id.*

Plaintiff's argument that his stated intention to drive was insufficient probable cause for

5

Defendant to arrest him for DWI—despite his concession that probable cause existed for Defendant to believe Plaintiff was under the influence of drugs or alcohol—has been rejected by numerous courts which "have consistently ruled that a defendant's intent to operate a motor vehicle can constitute 'operation' within the meaning of the statute." *Id.*; *see, e.g.*, *State v. Mulcahy*, 527 A.2d 368, 373 (N.J. 1987) (a failed attempt to put keys into a car's ignition nonetheless constituted operation of the vehicle because "engaging [the car's] engine . . . is not required for a [DWI] conviction."); *Morris*, 621 A.2d at 78 (defendant had requisite intent to drive, even though he was prevented by police officer who took his keys before he could turn on the ignition). To suggest that a person who police have probable cause to believe is under the influence of alcohol or drugs cannot be arrested for DWI after telling police he intends to drive his vehicle is wholly at odds with the purpose of the DWI statute – "to curb one of the chief instrumentalities of human catastrophe, the drunk driver." *Mulcahy*, 527 A.2d at 374; *see also State v. Jeannette*, 412 A.2d 1339, 1342 (N.J. Super Ct. 1980) (noting that, to arrest for DWI, police "should not have to wait until a potential danger is a real one"); *State v. Tinli*, No. 08-2007, 2009 WL 3460781, at *5 (N.J. App. Div. Oct. 6, 2009) ("engaging the engine in a moving vehicle is not required for conviction for driving under the influence") (internal quotations and citation omitted). This Court declines to adopt any argument to the contrary. Further, under Plaintiff's argument, the police should have waited for Plaintiff to actually get into his car and operate it before they had probable cause to arrest him. This is an absurd interpretation of the statute and certainly does not advance the policies behind its enactment.

Since this Court has determined that Plaintiff's arrest was lawful, summary judgment must be granted on his false imprisonment claim.[8] *See Bernard v. Cosby*, 648 F. Supp. 3d 558, 574 (D.N.J. 2023) (the tort of false imprisonment requires an arrest that lacked "legal authority or justification.").

### IV.  Conclusion

For the foregoing reasons, Defendant's Motion, (ECF No. 25), is **GRANTED** in its entirety.

**SO ORDERED**.

*Christine P. O'Hearn*
_____
**CHRISTINE P. O'HEARN**
**UNITED STATES DISTRICT JUDGE**

---

[8] To the extent Plaintiff attempts to raise a false arrest claim, either inartfully in his Complaint or for the first time in his Opposition, that claim is deserving of summary judgment for substantially the same reasons. *See James*, 700 F.3d at 680 (false arrest requires an "arrest . . . made without probable cause.").

6